

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 3:22-cr- 152 |
| ) | |
| v. ) | **Count 1: Conspiracy to Commit Wire** |
| ) | **Fraud** |
| ROSCOE CLEVELAND COPELAND ) | (18 U.S.C. § 1349) |
| (Counts 1 – 2) ) | |
| ) | **Count 2: Wire Fraud and Aiding and** |
| and ) | **Abetting** |
| ) | (18 U.S.C. §§ 1343 and 2) |
| DAWNN LYNN LONG, ) | |
| (Counts 1 – 2) ) | **Forfeiture Notice** |
| ) | |
| Defendants. ) | **SEALED** |
| ) | |

## INDICTMENT

October 2022 Term – At Richmond, Virginia.

THE GRAND JURY CHARGES THAT:

### General Allegations

At all times material to this Indictment, unless stated otherwise:

1. Defendants, ROSCOE CLEVELAND COPELAND and DAWNN LYNN LONG, owned and operated ALEXIS REALTY SOLUTIONS ("ARS"), a purported alternative funding source for prospective borrowers seeking to obtain loans for real estate purchases. COPELAND and LONG, operating as ARS, claimed to be a private lender with no middleman that would "search through many variations of security instruments" to find funding for customers. Prospective borrowers from ARS paid an upfront fee, typically 3% of the loan amount, to obtain the loan. ARS was registered as a company in the State of Michigan, and headquartered at 400

Renaissance Drive, Suite 2610, Detroit, Michigan 48243. COPELAND was the Chief Executive Officer (CEO) of ARS, and LONG was its Chief Operating Officer (COO).

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

2. From in or about 2016 through in or about January 22, 2018, the exact dates being unknown, in the Eastern District of Virginia and elsewhere, the defendants, ROSCOE CLEVELAND COPELAND and DAWNN LYNN LONG, knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to commit an offense contained within Chapter 63 of Title 18 of the United States Code, in that they conspired to knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud, transmitted and caused the transmission of writings, signs, and signals in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

### Scheme and Artifice

3. The purpose of the conspiracy was for COPELAND and LONG to enrich themselves financially by defrauding victims of money through materially false claims, to include misrepresentations that ARS was a private lender with no middleman, that advance fees paid by customers would be held in escrow or a secured trust account, and that customers' advance fees would be repaid in full if their loans did not fund within a set time period.

### Manner and Means

4. The manner and means by which COPELAND and LONG sought to accomplish the conspiracy included, but were not limited to, the following:

a. ARS employed "consultants" in multiple states, whose job was to identify prospective borrowers in need of non-traditional lenders and direct them to ARS. Consultants handled the onboarding process for customers. COPELAND and LONG verbally advised and provided written training materials to consultants that described how ARS purportedly obtained funding for loans, the types of loans available, and what the terms of such loans would be;

b. COPELAND and LONG promised consultants that they would earn a percentage, typically 2%, of their borrower's loan amount;

c. COPELAND and LONG created a website, marketing materials, and other documents, including social media posts, related to ARS to induce individuals to seek out ARS as a lending source;

d. COPELAND and LONG made and caused to be made material misrepresentations and omissions to both consultants and prospective borrowers about the availability of loan funding from ARS, the way the prospective borrowers' advanced fees would be held, and the guarantee of a refund of the advanced fee to prospective borrowers within a certain period should the borrower's loan not be funded;

e. ARS consultants, LONG, and/or COPELAND told prospective borrowers that to fund their loans the prospective borrowers had to pay a fee, usually 3% to 5% of the total requested loan value, to secure a "Reg D" or "144A" bond that could be used to fund both residential and commercial loans;

f.  COPELAND and LONG enticed prospective borrowers to pay these advance fees with promises of interest rates as low as 1% for a traditional 30-year fixed residential mortgage with the possibility of forgiveness of the loan after 15 years;

g.  ARS consultants, at the direction of COPELAND and LONG, and in some instances COPELAND or LONG themselves, represented to prospective borrowers that the borrower's advanced fee would be held in escrow or a trust account, until loans were funded, which was false;

h.  In fact, COPELAND and LONG had prospective borrowers wire their advanced fees to bank accounts for ARS that were not escrow or trust accounts (specifically a Huntington National Bank account ending in 7299 and a Bank of America account ending in 0063) but rather were accounts maintained in COPELAND's name from which COPELAND regularly withdrew funds for his personal use;

i.  In transaction documents signed by COPELAND and/or LONG that related to purported loans that were "approved" by ARS and given to prospective borrowers, the prospective borrowers were told that if their loans did not fund within a set period of time, which was typically 90 to 120 days, the borrower's advance fees were totally refundable. ARS did not fund a single loan, however, and very few prospective borrowers had any of their advance fee returned, and most prospective borrowers received nothing back;

j.  When loans were not funded, COPELAND and LONG falsely maintained to both consultants and prospective borrowers that such loans were forthcoming and that any delay was the result of an issue with a funding source;

    k.    In furtherance of this conspiracy, COPELAND and LONG routinely caused wire transmissions in interstate commerce, specifically wire transfers of advanced fees from prospective borrowers. Some of these wire transmissions came from or to locations within the Eastern District of Virginia from originating or destination locations outside the Commonwealth of Virginia;

    l.    Over the course of the conspiracy, COPELAND and LONG fraudulently obtained more than $655,000 in advanced fees from prospective borrowers.

5.    In furtherance of the scheme, the defendant, ROSCOE CLEVELAND COPELAND, committed the following actions, among others:

    a.    On or about December 8, 2016, COPELAND wrote an email to an ARS consultant identified herein as "M.J." stating that "the client's 2.5% deposit is totally refundable if there is an error on our private bank's behalf…";

    b.    On or about March 4, 2017, COPELAND sent an email to multiple ARS consultants, including but not limited to those identified herein as "L.R.," "M.J.," "D.B.," and "S.A.," stating that ARS had set aside $5 million in funding specifically toward the enhancement of Detroit, which was false;

    c.    On or about April 18, 2017, COPELAND emailed a PowerPoint "pitch deck" to LONG and ARS consultants identified herein as "K.R." and "R.S.," stating that the client's initial deposit "remains in escrow until the funds are matured," which "could take as little as 21 days but is allotted 30-45 days";

    d.    On or about July 27, 2017, COPELAND emailed a prospective ARS consultant identified herein as "C.N.," stating that ARS provided the best possible funding to

clients and received a percentage on the back end of the loan once the loan had been funded;

e. On or about September 15, 2017, COPELAND sent an email to an ARS consultant identified herein as "M.S.," who forwarded the email to an individual identified herein as "L.B.," who was both an ARS consultant and prospective borrower, falsely stating that loan funding for borrowers would be available the next week and that any borrower seeking a refund would be refunded the next week as well.

6. In furtherance of the scheme, the defendant, DAWNN LYNN LONG, committed the following actions, among others:

a. On or about April 7, 2017, LONG sent an email to a prospective borrower located in Norfolk, Virginia, identified herein as "M.S.," and M.S.'s ARS consultant who was located in Richmond, Virginia, and is identified herein as "D.M.," advising that M.S.'s loan request had been approved and stating "Please note that we [ARS] are the direct lender with no middle man [sic] or brokers that deal directly with the clearing house...":

b. On or about April 17, 2017, LONG sent an email to an individual in Millville, New Jersey, identified herein as "N.T," who was both an ARS consultant and a prospective borrower, stating "As you know, I have no idea when Kim will provide refunds. You know as much as I know. When you send a letter of request she calculates 30 business from the request. I am told that if Kim gets the monies sooner she will give refunds sooner. ARS has put up 4 million dollars of our own

      money to close this Friday 4/21/17 so I am well aware of utilizing ones [sic] own fund";

c.   On or about November 28, 2017, LONG sent an email to prospective buyer M.S. located in Norfolk, Virginia, attaching a letter stating that $20 million in funding had been approved for the "Hosanna Development Project" in exchange for the payment of an advance fee of $200,000 on or before December 8, 2017;

d.   On or about January 22, 2018, LONG sent prospective borrower M.S. located in Norfolk, Virginia, an email with an attachment signed by an ARS consultant also identified herein as "M.S.," which attachment stated that [the borrower] M.S.'s "funding for the above-referenced project will be available on or before January 31, 2018 per our multiple sources of private funding…"

(In violation of Title 18, United States Code, Section 1349.)

## COUNT TWO
(Wire Fraud)

The preceding paragraphs are incorporated by reference as if fully set forth here.

On or about October 18, 2017, in the Eastern District of Virginia and elsewhere, the defendants, ROSCOE CLEVELAND COPELAND AND DAWNN LYNN LONG, aided, abetted, induced, counseled, and encouraged by each other, having devised and intending to devise the scheme and artifice to defraud described above and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, two wire transfers in the amounts of $28,000 and $7,000, both from a Navy Federal Credit Union bank account located in the Eastern District of Virginia controlled by a prospective

buyer identified herein as "M.S." to an ARS Bank of America account with account number ending in 0063 located outside of the Commonwealth of Virginia.

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendants, upon conviction of any offense set forth in Counts One and Two of the Indictment, shall forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

If the property subject to forfeiture meets the requirements of 21 U.S.C § 853(p), the United States will seek an order forfeiting substitute assets.

(All in accordance with Title 18, United States Code, Sections 982(a)(1), 982(a)(2) and 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p).)

A TRUE BILL:

_____
FOREPERSON

JESSICA D. ABER
UNITED STATES ATTORNEY

_____
Brian R. Hood
Assistant United States Attorney

_____
Kenneth R. Simon, Jr.
Assistant United States Attorney

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office